We will hear argument next in CCS Technology v. Penduit Corp. 18-1733. Mr. O'Quinn. Thank you, Judge Taranto. May it please the Court, John O'Quinn on behalf of Corning. The Board's decision in these consolidated IPRs turns on its construction of the term optical ribbon as, quote, encompassing the optical fibers that are grouped and aligned in a generally planar array. That is inconsistent with the plain and ordinary meaning of ribbon, with the clear definitional statement in the specification, and with every dictionary and technical document in this case. The Board's construction instead allows the ribbon limitation to be satisfied by any group of separate individual fibers laying flat on a table. Respectfully, that defies common sense, and it effectively reads out the ribbon limitation altogether. Once that mistake is corrected, the Board's findings of invalidity should not only be vacated, but reversed. Can I ask you, it struck me that perhaps on that assumption of the claim construction being wrong, there might be a difference between the 227 and the 600, because in the 600, the Board expressly relied on the tape reference in Toyuka. I think in the 227, but the petition made at least one passing reference to the tape. So just on that, and then we'll get back to the claim construction. Sure, absolutely. So you're absolutely right, Judge Toronto. Panduit relies on different fibers within Toyuka to satisfy the ribbon limitations. One set for the 227, a different set for the 600. And you can see this at footnote 5 of page 10 of their brief. Specifically, they rely on optical fiber 16, that is the fibers inside box 10 or box 110 of Toyuka for the 227. Those are single core optical fibers. Those are not the tape of Toyuka. Now, and with respect to the 227. But they rely on the tape, which is, I think, in figures 2 through 5 of Toyuka, but not in figure 1 of Toyuka. They do rely on the tape of Toyuka for the 600, not the tape 30. Now, under our construction, we think that it requires reversal as to both. With respect to the 227, I think it's very straightforward because those are single core fibers. They are not in any way, shape, or form bound together, certainly not by a common layer. With respect to the 600, the argument is simply this. There is no evidence that the tape of Toyuka includes a common layer. Toyuka doesn't say whether there is a common layer on their tape. And similarly, at appendix 1472, Toyuka's tape, quote, may or may not have a matrix or a common layer, quote, Toyuka does not specify either way. And so, of course, for purposes of anticipation or the finding that a limitation is necessarily present, as this court held in HTC at 877 F3rd at 1369, it's not enough that an element might possibly be there. It has to be there. And so, if you adopt our claim construction, I think that requires reversal as to both patents. But even if you think that with respect to the 600, it might require a remand because there's some ambiguity over the tape. And I don't think that there is in terms of the record they've put on. But even if you thought that, that wouldn't apply with respect to the 227. I was going to ask about your patent specification, specifically figures 2 and 5. Yes. Specifically figure 2, we have this module 60, and inside that box in the figure, we see all these crisscrossing fibers. Sure. Inside the If, to be consistent with this figure, we have to read what's going on with respect to these fibers as being an optical fiber ribbon, then it doesn't appear to me that those fibers that are crisscrossing each other are somehow bound together by some common layer, some common coating, or something like that. Is that fair to say? Well, Judge Chin, I think that if you look at the figure, what you see, and of course, the figures, this is not like some figure that's drawn to scale, and this court has repeatedly cautioned against over-reliance on drawings that aren't drawn to scale. But if you look at what's going on in this figure, and you look at sort of the left-hand side of that box 60, what you see is effectively like a tree with branches. And that is that you see that you have the ribbon that's within box 40, and the ribbon is being fanned out. And the specification talks about using a fan-out kit so that you have it fanning out at the ends. And our position, and this ties back to the claim construction, is simply this. A frayed ribbon, a tattered ribbon, is still a ribbon. What's not a ribbon is when you completely separate out individual fibers, and you just have those individual fibers separately. And that's all that's disclosed within box 10 of Toyuka. That's the theory that they relied on before the board, and that's the construction that the board adopted, saying that they don't have to be bound or combined in any way. Am I remembering right, and this, I think, looms extremely large, let's call it the Claim 3 problem. Sure. Am I remembering right that before the board, your counsel said, when the fibers are now in the frayed part, they're no longer a ribbon. So I think what counsel was... And yet, I'm sorry, the point, at least it sticks in my mind, I may not get it quite right, and yet Claim 3 requires that what's happening on the right side, when you get to 51, 52, 53, 54, be the ribbon connecting. Well, and certainly Claim 3 makes clear that you have to have, that it has to be a ribbon that is connecting. And I think that where the board got wrapped around the axle is the idea, and we can see that at the ends, the ribbon can be separated. It's still a ribbon because it's still, the branches are still connected to the trunk of the tree. They're still part of the tree. Now, when you saw the branches off and they're lying on a pile, you may have a pile of branches, but you don't have a tree. And that sort of, I think, is what counsel was trying to explain to the board in that colloquy over Claim 3, an issue that the board was raising for the petitioners had relied on, was to say, yes, you have what you would refer to as individual fibers at that point. Indeed, the claim language talks about the fibers of an optical ribbon, but they're still part of the ribbon because they're still connected. Claim 3 talks about the other end of the optical ribbon being installed into the plurality of optical fiber connectors. I mean, I guess what you would like us to do is read into that limitation so that something different, so it would say installing the ends of the fibers from the other end of the optical ribbon to a plurality of optical fiber connectors. Well, I don't think it's necessary to say that, Judge You can think of a ribbon that you receive at an award ceremony that flourishes at the end. That's all still a ribbon, even though it's been partially separated out. Now, once you strip it away completely, once you strip away the fiber completely so that it's no longer bound at any point to the other fibers by a common layer, then at that point it's just a fiber. It's not a fiber that's part of a ribbon. But as long as it's a fiber that's part of a ribbon, I don't think there's anything that's inconsistent with Claim 3 to say, well, you're attaching one end of the ribbon here and the other end of the ribbon there, even though, yes, the ribbon is frayed at the end at which you are attaching. It's their construction that would effectively read out optical ribbon. I mean, at that point, if you look at, say, for example, Claim 1 of the 227, it talks about the plurality of optical fibers of an optical ribbon. Well, you just read out the words of the optical ribbon. They used, in the words of Pandewitt's own expert, definitional language to explain what an optical ribbon was. And the board seems to have gotten... Can I ask you about that? What is it? Column 2? Is that where that is? It's column 2, line 18. Right, an optical ribbon includes language. What else is in an optical ribbon over and above the things identified after the word includes? So, I don't know that there would be much that necessarily would be included in an optical ribbon, Judge Toronto, beyond the fibers and materials that's pulling them together. I'm not sure how much this would matter. Doesn't that make the word includes a little bit odd? Why doesn't it say is, if there's truly nothing else? Well, Judge Toronto, I mean, I think it is somewhat related to how that sentence then proceeds, because the sentence tells you what is necessary, that is, that you have the fibers and that they are coated with a ribbon common layer, and then it goes on to say the common layer may be of ultraviolet light curable type. And the next few sentences tell you about other optional things that you can do vis-a-vis the optical ribbon. Right, but the board took the word includes and translated the sentence into, you know, the category of things we call optical ribbons include the following things, and that's, that there's a certain oddness to that. The oddness, I guess I just want you to address again, that I see, which may not be as big an oddness, on the other side is the use of the word includes if what follows includes is indisputably the sum total of this ribbon. Yeah, and Judge Toronto, I'm not suggesting that it necessarily is. For example, you could imagine saying that it might also include different numbering schemes or color coding or other type things. But I think the use of the term including here is exactly like the use of the term comprising that appears in claim language. And it is really kind of the classic use that this court has talked about in cases like drafters of the patent would, of course, have known that, that this is the type of language that this court has interpreted as identifying things that are essential, even though other elements may be added. And if you look at how it's being used here, that's exactly what's going on. You have the indefinite article and that is introducing a concept, and then it's proceeding to tell you what the concept is. And it doesn't say may include, could include, can include. It a plural and then having a listing of different things that might be. And it doesn't have quotation marks around the word optical ribbon. It's saying what the object includes, not what the terminology covers. I think the way that it's being used here is very much the idea of introducing a concept and explaining exactly what the concept is. And it's telling, unlike the example that they point to in Jazz Pharmaceuticals, where there was an illustrative list and you could clearly see from the context, it was an illustrative list referring to a specific embodiment. What you have in this case is in the second sentence of the background of the invention, before you get to any embodiments, the inventors explaining this is what the concept of an optical ribbon is. And the use here, I think, is directly analogous to the use in Amgen. There, the claims comprised the sequence of figure six and the specification said that that included 166 residues. When I look at figure two, thank you, I think we know Amgen, but when I look at figure two and I see what's referred to as element number 20, the optical ribbon, I don't see anything that looks like a separate structure, separate and apart from the individual fibers that are all aligned, maybe tightly aligned, but I don't see a separate structure that's actually binding the individual fibers together there. Sure, again, I think that the figures here... Is that fair to say, about my understanding of what I see just when I look at figure two? Well, I think the figures, of course, are simply trying to aid one in understanding ultimately the claim language and the background in the specification. And I think that what you see here is what's being described, for example, at appendix 133, column two, line 45. It talks about the ribbon 20 being disposed in a matrix, and matrix and common layer terms that were used interchangeably. I think it is telling you that 20 is a ribbon. It has told you in the These are not color photographs. These are sketches, not to scale, in order to help sort of orient the person of ordinary skill in the art who would understand that the thing that they're identifying is 20, where it is identified as all being together and not being separated out, is the ribbon that is being referred to in the specification. I see I'm well into my rebuttal. If the court has further questions, I'm happy to answer them. Otherwise, I'll reserve the balance of my time. We'll restore that for you. Thank you, Judge Tronto. Good morning, Your Honors. May it please the court. A number of issues that were just raised by Mr. O'Quinn. I'd like to start out with the claim three problem that you just addressed, Judge Tronto, and also you alluded to Judge Chen. What claim three requires is that the optical ribbon inside the module be installed into the multi-fiber connectors, as well as the plurality of single-fiber connectors. The specification teaches that those connections are made by individual fibers. If we think of the ribbon as being some separate structure, some separate physical thing apart from individual fibers that are enclosed or physically attached to that ribbon, even though the claim three says install the ribbon into all those single connectors, I think one of skill would understand you're not literally trying to install the coating into those single connectors, right? Everyone would know you're trying to install the ends of the fibers that are contained inside of the ribbon. Is that fair to say? Well, those individual fibers, so you have the ribbon, part of which under their construction is coated, but you also have part of it that are individual fibers. They admitted that there are individual fibers that are going into those connectors. That's why ribbon isn't just limited to their construction. It's looked upon as a broader construction because it can be those that they're proposing. But why isn't the common sense of it what Mr. O'Quinn said, which is that it may be the individual fibers that are covered by this ribbon language, but only if at some point along the length of this thing called a ribbon, there is a essentially two-dimensional joining of these individual fibers. And at least if you look at the portion as figure one of Toyuka, which you relied on, there is no place where those individual fibers are joined. So frayed ends are one thing, or even slightly separated ends are one thing, but where there's no end that you can talk about of a unitary flat joined object, then there is no ribbon. So the problem we have there though is that the specification provides an encompassing definition. That's why they use the word includes. I know that's a big dispute between the parties, but it would include both of those situations, not just simply the frayed end. There's the frayed end situation, which they're arguing. There's a ribbon common layer, which they're also arguing, but they're also the individual fibers as well. I mean that's what the court was getting at with respect to this claim three issue. You have a situation where they're arguing that as soon as you fan things out, you don't have a ribbon common layer anymore. You have no ribbon. The problem with their argument is that they concede, however, that you have to have individual fibers, and that's what the specification itself teaches. I thought at least here their argument is that it's still a ribbon when you've frayed the edges, as long as you haven't completely gotten rid of all the coding from A to Z. Well, Your Honor, it's a bit confusing actually what they were arguing, and I think that's why the board held that their construction was untenable. Let me try to... You understand this better than I. It seems to me that in this court, Corning has been clear in addressing a figure three problem, let's call it, by saying a ribbon in which the ends are frayed so that at one or either end there are now loosened fibers is still within a ribbon, but that does not mean that if all you have is a pile of separate fibers at no point connected that that would be a ribbon. Maybe they said the opposite in oral argument to the board, but just to be clear, have I got right what they are now saying? That's my understanding, Your Honor. I mean, they know their position the best, but that's my understanding of their position, but I think that is the fatal problem is that they argued something differently in front of the board, and I think really 585 of the oral hearing kind of summarizes all of that because it talks about, this is where they talk about, yes, individual fibers are not a ribbon. On the other hand, you have to make the fibers are individually connected to the connectors, and the board calls them out on that and says, look, you have a contradictory argument here, and we can't reconcile that. That's why we find that your construction is untenable. So yes, they may be arguing now that you have some sort of a ward where you have a ribbon with frayed edges, but the problem is they argue the opposite down here, which is that once you separate the fibers, it's over. You don't have a ribbon anymore, and I think that's why the board said, look, I can't adopt this construction. It's internally inconsistent. What happened during the preliminary patent owner response where the patent owner was talking about how the fibers, once they're crisscrossing each other in a very individualized way inside the module, they're nevertheless ribbonized somehow. What did you understand that to mean? In terms of what their actual position is? In terms of trying to understand what does it mean to be an optical ribbon? I'll be honest with you. It's a bit of a confusing argument for me because on the one hand, they're arguing that something that's ribbonized, i.e. has a ribbon on it, and where there are not individual fibers, that that constitutes a ribbon, but as soon as you start to separate them out, then it's no longer a ribbon. So it's a bit hard for me to actually articulate what their position is because they were arguing directly opposite positions before the board. And did Corning say specifically in the context of Claim 3, once you separate them out, that phrase or that idea could mean, it seems to me, either of two things, one of which would be consistent with their current position, one of which would not. It might mean if you have no coding at all, so it's now just a pile of mutually unattached fibers, you don't have a ribbon anymore. Or it could mean the individualized ends from which the coding has been stripped. Is it clear that Corning said the latter was no longer a ribbon? Well, I'll just read you their statement. This is on page 585 of the Joint Appendix. Our definition is an optical ribbon is fibers coded in a ribbon common layer, period. And once you have separated and routed them from the common ribbon common layer, they are individual fibers. Once you have routed them from the common ribbon common layer, they are individual fibers. It's the routed word. Right, you're routing them into the actual connectors. I think that precludes their argument now that this frayed end issue saves them from the Claim 3 problem. And that's why Judge Galligan, when he wrote his decision, said, look, this is just untenable. We can't get there. You have literally argued completely inconsistent positions and now they're in a really tough spot. With respect to the specification itself, the includes language that we've been talking a lot about. So we have Claim 3, which we believe is fatal to their position. We also think that the includes language that we've been focusing is also difficult for them. First of all, they talk about grammatical signals. There are no grammatical signals that are also indicating that this is a definitional term or that it's limiting term. And in fact, Judge Toronto, I believe you pointed out, or Judge Shen said, the word is is not present. That's correct. And they knew exactly what they were doing with respect to this particular use. Right, but the word includes in common parlance in this world says these are required elements. There may be more, but these are required elements. Whether you call that definitional seems to me almost, I guess, what people in common parlance call the semantic matter. They are stating requirements in the ordinary use of includes when the first thing in front of the includes does not have quotation marks around it. So you're not talking about the word, you're talking about the thing that the word denotes. I respectfully disagree on that point. The Jazz Pharmaceutical case, I think, is very instructive. A recent decision in which the term includes or including was used in the specification. A variety of things were following the including, and this court held that no, that language includes is not limiting. In other words, we're not going to import those specific things and require the claims to contain them. I don't see any daylight between that case and our case. In fact, many of the cases that they cite actually have the word including in the claims themselves. And that's why those cases are distinguishable, because there's no dispute here that in that context where you have comprising and including, this court has held that those claims are used interchangeably. Here we have the word includes used in the specification. It's a different situation, and Jazz backs that up. But something that's even more persuasive here, because we can argue back and forth about that, is the patent owner's own use. When it comes to claims, the courts are more nitpicky about grammar, but when it comes to reviewing content in the written description, I don't know, patent drafters get a little looser, and maybe we shouldn't be so exacting with respect to grammar. I'm not sure if I'd go that far, Judge Chen, but if we look back at the Jazz Pharmaceuticals case, that distinction is what's clearly present. Including in the specification was held not to be limiting. Rather, those were potentially included, but not mandatorily included, which is what they advocate. And I don't see any daylight between that case and this one. But the other thing is, if we focus specifically on this patent, what did they do? So we have three different circumstances in which they use the word includes or including, followed by specific language. Then they took that language and put it directly into the claims and made it a claim limitation. They made it limiting. They specifically did not do that here with respect to ribbon common layer. And I will just direct the court's attention to the phrase module, optical interconnection, and multi-fiber connection having a key, which we discuss in our briefs. Those three limitations were all put inside the claims from the spec. Ribbon common layer was not. That's a very important distinction. I just want to talk very briefly about the extrinsic evidence, to the extent this court wants to go there. And the board clearly relied almost exclusively, or perhaps exclusively, on the intrinsic evidence. But Mr. Pearson's manual, their expert, which was written before this IPR proceeding, it gave a very broad definition of what a ribbon is. It said, a structure on which the multiple fibers are precisely aligned. So even he was giving this a broad definition, as are the dictionaries that they cite in several places throughout their brief. How does that match up with the pile of loose fibers? Well, also I do want to address that issue about the pile of loose fibers. So they portray our construction as like Einstein's hair going all over the place, with fibers going in all directions. Our construction, which the board partially adopted as part of its construction, is grouped or aligned in a planar array. The loose fibers that are floating around on the table are not grouped and aligned in a generally planar array. So that's why that argument is a bit hyperbolic, and it's not reflective of what the board's construction actually is. But those dictionary definitions also look at the concept of what a ribbon is as very broad. And so there are a number of examples of what a ribbon can be. Tapes, adhesives, plastic strips, on and on. And we see that in A1033, as well as A1621 in the record. If I may touch upon the issue of affirmation, they argue that this case should be reversed or even remanded. And we don't agree with either of those things. And we believe that based on the record before you, you can affirm even if you adopt their ribbon common layer construction. And I'd like to just point you to two places in the record. And if I may direct you to page 774 of the Joint Appendix. And we look at Toyuka for a second. So first, as we pointed out in our briefs, there are two examples of ribbon common layer that you can base an affirmance on, even adopting their construction, which we believe is wrong for the reasons the board indicated. The first is the optical tape 30. And just to be clear, optical tape 30, which is depicted in Figure 2, they characterize optical tape as a type of ribbon in this very brief, because they rely upon dictionary definitions. And one of those very dictionary definitions that supports ribbon common layer, their construction, cites tape as an example. So tape checks off that box as a potential ribbon common layer. Secondly, if we look at Figure 1, we see that... Only for the 600. Correct. That's correct, Your Honor. And that's why I'm going to direct you to Number 2, which is in Figure 1 of Toyuka, again, where it's still at 774. And what we see there are fibers, and they're connected to a plurality of single core connectors on the left side. That's 14. And on the right, the multi-fiber connector on the right. And this is really what's crucial here. Corning's experts stated that there are two purposes of ribbon, attachment and alignment. And I direct you to 14.14 of the record at paragraph 15. That's exactly what's happening here. These connectors are aligning and attaching these fibers. And it was for this reason that in the institution decision in the co-pending IPRs, which we cited in our brief, the board said, well, we're looking at Figures 1 and 2 of Toyuka. We're looking at Figure 2 of the patents in suit. And what we're seeing is basically exactly the same thing. These are essentially identical figures. I mean, keep in mind, this was an anticipation ruling, which is pretty remarkable. So you compare these two figures. If they call what they disclose a ribbon common layer, then Toyuka has to disclose a ribbon common layer. And that's what the board said in its institution decision in the co-pending litigation. Because really, all roads lead back to Toyuka. Toyuka discloses exactly what they disclose and claim. Does Toyuka make clear, we're just looking at Figures 1 and 2 here, whether, I guess, look at Figure 2. Is there a break between, I guess, the inside 12, the stuff that's going on inside the box 10, and the tape that's given a single twist to the right? Is this essentially a pass-through connector? Or are there essentially plugs in here so that these are actually different fibers as you move from the intermediate zone with the twist on the right into the box onto the left? That's my understanding, Your Honor. Which is your understanding? My understanding is that the fibers in that tape are going into the connector, and then those are optically connected to other fibers, which are identified as 16 in Figure 1. You have to put those two together to figure out what's happening. Your Honor, may I just have one minute to conclude? Yes. So the Toyuka reference is eviscerating prior art to the challenge claims, Your Honors. No matter how you look at it, Toyuka discloses exactly what the challenge claims claim and what the patents disclose. If you compare Figure 2 and the patents to the figures in Toyuka, you get a virtually exact overlap. And the Board understood that immediately and put those two side-by-side in its decision and led the Court to find that all the claims were anticipated in its very thorough 64-page decision where it marched through every single claim limitation and connected that. So substantial evidence amply supports that decision. And with respect to the intrinsic record, it fully supports the Board's construction that it gave to the optical ribbon limitation and gave it its broadest reasonable interpretation. And for these reasons, this Court should affirm. Thank you. Judge Stronser, with respect to your last question, my understanding, if you look at Figure 5 of Toyuka, you see that there are actually two different things that are being connected together. 132 is the multi-core connector that connects to 112. And certainly, my understanding is that the Board treated these as being completely cut, being separate. He refers to them as being optically connected, meaning one is associated with the other, but they're actually separate things. Now, turning back to the issue of claim construction, let me just start with this. Whatever you think of our construction and whatever you think of the arguments that were made before the Board that my colleague on the other side relies on, the Board's construction cannot possibly be right. Because the Board's construction means that you don't have a ribbon at all. You don't have to have a ribbon. All you have to have is a group of the optical ribbon. Well, they have to be aligned or whatever. Well, sure. But if you look, for example, at the first element, for example, of Claim 1, it already requires that they be optically aligned. So Claim 1 requires a multi-fiber connector with multiple optical paths formed therein, the optical paths being arranged in a generally planar array, and with the optical path being immediately adjacent to at least one other optical path. But it defies common sense to say that you can have, if you take a ribbon, remove all the fibers, lay the fibers down, and that you still have a ribbon. Now, with respect to a lot of discussion about the points that were made by counsel during the IPR, you can't look at 585 in isolation. You have to look at Appendix 586, where counsel was making the point that, yes, the ribbon would have to be separated at the ends, and a person of ordinary skill in the art would understand that. And what he was talking about in context, I think it's plain, is that, yes, you have what you can talk about as individual fibers, but those individual fibers are still connected to the trunk. They're still part of the ribbon, just like a branch would still be connected to a tree. They're not separated completely. And, indeed, Claim 3 talks about connecting the optical fibers of the optical ribbon in a particular numerical order. In any event, whatever you think with respect to this, these are issues that arose on an issue that the Board raised at the hearing for the first time, which raises issues under Nuvasiv and Dell versus Accenture and Magnum Oil. And, certainly, this Court doesn't go about determining claim construction under the Phillips standard based on statements made in passing at a hearing. The Board decided this on was ultimately two things. Number one, its view that the word includes necessarily meant that there had to be more, because it viewed it as being illustrative as opposed to definitional, which I think is wrong and inconsistent with this Court's precedence. And, number two, the Board just couldn't get its head around, well, how it is that you can have a ribbon that would be attached at both ends if they're going to be sequenced in a different way. And, of course, the answer to that is a ribbon that is separated out in part or frayed or tattered is still a ribbon. If the Court has further questions, I'm happy to answer those. If not, thank you, Your Honor. Thank you for arguments, both counsel. Case is submitted.